Bishop COLLINS, et al.,
Plaintiffs-Appellees,

v.

Gerald THOMPSON, et al.,
Defendants-Appellants.

No. 81–3555.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 8, 1982.

Decided June 8, 1982.

---

Michael Madden, Asst. Atty. Gen., Olympia, Wash., for defendants-appellants.

Robert Adelman, Seattle, Wash., argued, for plaintiffs-appellees; John Midgley, Seattle, Wash., on brief.

Before HUG, SKOPIL, and FLETCHER, Circuit Judges.

SKOPIL, Circuit Judge:

The state appeals from the district court's order approving a consent decree regarding the reduction of inmate population at Washington State Reformatory. We affirm.

## I.

The original complaint was filed in early 1978 by prisoners at the Washington State Reformatory ("the Reformatory"), as a class action on behalf of all present and future Reformatory inmates, alleging that the conditions of their confinement were unconstitutional. After discovery had been completed, a trial date was set for January 15, 1981. On January 13, 1981 the parties gave notice of a proposed settlement, and the trial date was stricken. On January 19, 1981 a proposed consent decree was submitted by the state for provisional approval, and an order providing for notice of the settlement to the class and allowing objections was issued. The proposed consent decree provided for eventual reduction of the Reformatory's population to the single cell capacity of 656. On February 6, 1981 the state discovered an error in the consent decree. The typed body of the consent decree listed the following dates for reduction of the Reformatory's population:

| Date | Population |
| --- | --- |
| March 1, 1981 | 865 |
| July 1, 1981 | 850 |
| October 1, 1981 | 790 |
| December 1, 1981 | 735 |
| July 1, 1983 | 656 |

However, the state's adult corrections master plan, which was attached to and incorporated by reference into the Decree, provided that the Reformatory's population reduction to 865 would be accomplished by April 1, 1981, rather than March 1, 1981. On February 13, 1981 the state submitted a revised consent decree listing April 1, 1981 as the date for reduction to 865. On February 26, 1981 the prisoners moved for approval of the consent decree with the March 1, 1981 date intact, or in the alternative for issuance of an amended notice to class reflecting the modification to the April 1 date. The state moved for modification of the decree to incorporate the April 1 date.

On March 4, the magistrate denied both the state's and the prisoners' motions, finding there had been no meeting of the minds with respect to a key term of the agreement and that therefore no contract had been formed. The prisoners appealed the magistrate's decision to the district court, which upheld the magistrate's order. The prisoners' motion for permission to take an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) was also denied.

On May 15, 1981 the prisoners filed a Notice of Acceptance of Offer of Settlement stating that they accepted the offer of settlement embodied in the proposed decree submitted by the state on February 13, 1981. This form of the decree changed the March 1st date to April 1st. The prisoners

also filed a motion for preliminary approval of the consent decree.

On June 12, 1981 the magistrate issued an order granting preliminary approval of the consent decree. The magistrate held that the state's submission of the proposed consent decree on February 13, 1981 (which utilized the April 1 target date) was a valid offer, that the prisoners' attempt to settle the date as March 1 was not a rejection of this offer, and that the state did not revoke the offer prior to acceptance. On August 17, 1981 the district court approved and adopted the magistrate's recommendation. The state filed a timely notice of appeal. On the state's motion, the district court stayed the decree pending appeal insofar as it requires reduction of the Reformatory's population below 850.

## II.

The issue on appeal is whether the district court was clearly erroneous in finding (a) that the proposed consent decree of February 13, 1981 was an offer; (b) that the prisoners did not reject the offer; and (c) that the state did not revoke its offer prior to acceptance.

■ Determinations of contract matters regarding offer, rejection, and revocation utilizing the objective standard are factual. *See, e.g., Lundgren v. Freeman,* 307 F.2d 104 (9th Cir. 1962) (mutual mistake); *Barnes v. Treece,* 15 Wash.App. 437, 440, 549 P.2d 1152 (1976) (offer). Factual determinations must be upheld on appeal unless clearly erroneous. *United States v. United States Gypsum Co.,* 333 U.S. 364, 394–95, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948); Fed. R.Civ.P. 52(a). The state argues, however, that factual determinations made by the district court when there are no disputed underlying facts and the district court considers only documentary evidence are to be reviewed *de novo,* citing *Stevenot v. Norberg,* 210 F.2d 615 (9th Cir. 1954).

■ The rule in this circuit is that we apply the clearly erroneous standard in reviewing factual determinations by the district court, even if those determinations are based on undisputed facts and based on written evidence. *Maxwell v. Sumner,* 673 F.2d 1031 (9th Cir. 1982); *In re Beverly Hills Bancorp,* 649 F.2d 1329 (9th Cir. 1981); *International Association of Machinists and Aerospace Workers v. San Diego Marine Const. Corp.,* 620 F.2d 736 (9th Cir. 1980); *Lundgren v. Freeman, supra.* Following the Supreme Court's decision in *Commissioner v. Duberstein,* 363 U.S. 278, 289, 80 S.Ct. 1190, 1198, 4 L.Ed.2d 1218 (1960), we stated in *Lundgren* that determinations based on the "factfinding tribunal's experience with the mainsprings of human conduct" were factual and thus reviewed under the clearly erroneous standard. The determinations in this case, though based on written evidence and undisputed facts, are factual determinations and must be upheld on appeal unless clearly erroneous.

## III.

At the outset, we emphasize that this case on appeal involves only whether there is an enforceable consent decree. We express no view on the eighth amendment questions raised in the original complaint.

■ General contract principles apply to questions of interpretation of consent decrees. *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 236–37, 95 S.Ct. 926, 934–35, 43 L.Ed.2d 148 (1975); *United States v. Armour & Co.,* 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757–58, 29 L.Ed.2d 256 (1971); *United States v. Northern Colorado Water Conservancy Dist.,* 608 F.2d 422, 430 (10th Cir. 1979); *Robinson v. Vollert,* 602 F.2d 87, 92 (10th Cir. 1979); *New York State Ass'n for Retarded Children, Inc. v. Carey,* 596 F.2d 27 (2d Cir.), *cert. denied,* 444 U.S. 836, 100 S.Ct. 70, 62 L.Ed.2d 46 (1979). Questions regarding formation of consent decrees likewise are to be resolved by general contract principles. A consent decree is essentially an agreement of the parties to resolve their dispute, and the facets of agreement are analyzed by applying contract principles.

■ The law of the situs state, in this case Washington, should be applied. *See*

*Irving Trust Co. v. Day*, 314 U.S. 556, 561, 62 S.Ct. 398, 401, 86 L.Ed. 452 (1942). Under Washington law, the objective test is applied in determining issues of contract formation. *See Plumbing Shop, Inc. v. Pitts*, 67 Wash.2d 514, 517, 408 P.2d 382 (1965); *Wax v. Northwest Seed Co.*, 189 Wash. 212, 218, 64 P.2d 513 (1937); *Alexander & Alexander, Inc. v. Wohlman*, 19 Wash.App. 670, 680, 578 P.2d 530 (1978); *Barnes v. Treece*, 15 Wash.App. 437, 440, 549 P.2d 1152 (1976).

## A.

██ The state argues that the proposed consent decree dated February 13th was not an offer. However, the state never raised this argument below. In fact, in the only memorandum in opposition to the motion for the order granting preliminary approval of the consent decree, the state called the February 13, 1981 consent decree an "offer".

██ Issues not presented to the trial court should not be considered on appeal, *Inman-Poulsen Lumber Co. v. Internal Revenue Service*, 219 F.2d 159 (9th Cir. 1955), unless injustice might otherwise result, *Roberts v. Hollandsworth*, 582 F.2d 496 (9th Cir. 1978), or where the issue involves only questions of law. *Telco Leasing, Inc. v. Transwestern Title Co.*, 630 F.2d 691, 693 (9th Cir. 1980). Whether the proposed decree is an offer is a question of fact. None of the exceptions to the rule apply, and this point cannot be raised on appeal.

## B.

The state argues that the prisoners' actions in strenuously pursuing the enforcement of the proposed consent decree with the March 1, 1981 date constituted a rejection of the February 13, 1981 offer.

██ Generally, a rejection or counteroffer ordinarily terminates the power to accept the previously-made offer. 1 Jaeger, *Williston on Contracts* § 51 (3d ed. 1957); 1 Corbin, *Contracts* § 90 (1963 & Supp.1980). However,

"The offeree [has] the power to prevent his counteroffer (or even a rejection) from terminating his power of acceptance. Suppose he should say: 'I am still considering your offer; but meantime I am now willing to buy the property you offer if you will reduce your price by $500.' There is no reason why this should lead the offeror into a change of position, or why it should operate to terminate the power of accepting the original offer still under consideration."

1 Corbin, *Contracts* § 92. The *Restatement* also agrees with the above contract principle:

"A manifestation of intention not to accept an offer is a rejection *unless the offeree manifests an intention to take it under further advisement.*"

*Restatement (Second) of Contracts* § 38 (1981) (emphasis added).

██ On February 26, 1981 the prisoners moved for either (1) approval of the consent decree with the March 1, 1981 date, or, in the alternative (2) a notice to the class to reflect the change in the decree to April 1, 1981.

The district court found that

"The plaintiffs' alternative motion on February 26, 1981 for a new notice to the class clearly indicated that the plaintiffs were not rejecting the entire settlement and that they fully intended settlement even if the date were the April 1st date."

There is sufficient evidence such that this finding cannot be held clearly erroneous. As stated above, the objective test is used to determine questions of contract formation. The February 26th motion would not clearly indicate to a reasonable person that the prisoners were rejecting the proposed settlement offer with the April 1st date. In point of fact, the prisoners in this motion specifically indicated they were still considering the April 1st date.

The cases cited by the state for the proposition that attempts to accept a previously-rejected offer after trial or arbitration had commenced are not on point. In both cited cases, the trial court found that the plaintiffs had explicitly rejected the offer. *See*

*Burton v. Coombs*, 557 P.2d 148 (Utah 1976); *Smaligo v. Fireman's Fund Insurance Co.*, 432 Pa. 133, 247 A.2d 577 (1968). In neither case did the offeree "manifest an intention to take [the offer] under further advisement." *Restatement (Second) of Contracts* § 38. In the present case, the prisoners indicated by their alternative motion that they did not consider the offer terminated.

C.

▪ A revocation can be made by any statement which clearly implies unwillingness to contract according to the terms of the offer. *See Wax v. Northwest Seed Co.*, 189 Wash. 212, 218, 64 P.2d 513 (1937); 1 Jaeger, *Williston on Contracts* § 55.

▪ Prior to the filing of their Notice of Acceptance on May 15, 1981 the prisoners attempted to take an interlocutory appeal of the district court's refusal to approve the decree with the March 1 date. That appeal became a factor in the parties' negotiations. The state argues that its counsel's statement to the prisoners' attorney that "defendants would not discuss entry of any consent decree until plaintiffs dropped their appeal of the proposed consent decree" was a clear revocation.

> The district court found that
>
> "such comments ... do not indicate a clear intent to revoke, especially since defendants' counsel continually reiterated that it was their intent to enter into the agreement with the terms contained in the February 13, 1981 offer. There is no indication in the record that any action was taken by defendants prior to plaintiffs' May 15, 1981 acceptance and acquiescence which would indicate that the February 13 offer was not still open."

The statement by state counsel is clearly subject to the interpretation given by the district court, which is that the offer remained open, but that the state was unwilling to discuss the specifics of the procedure of entering into a consent decree while there was litigation pending concerning the interpretation of the previous consent decree. We cannot say that the district court's finding is clearly erroneous.

D.

▪ The state also argues that because of the role of the district court in consent decrees, "as a general rule parties should not be bound by such decrees until they are approved by the court." The state argues that because the court may order modifications to the settlement agreed on between the parties, either on its own initiative or after a hearing considering objections of class members, no binding contract is reached until after judicial approval.

We reject this argument as misconstruing the purpose of judicial approval of consent decrees. There are two steps in reaching a settlement in a class action: (1) the parties by themselves reach an agreement of settlement, and (2) the court evaluates the proposed settlement. The reason for judicial approval is not to give the negotiating parties more time or even to ensure that the settlement is fair as between the negotiating parties, but rather to ensure that other unrepresented parties and the public interest are treated fairly by the settlement. *Norman v. McKee*, 431 F.2d 769, 774 (9th Cir. 1970), *cert. denied*, 401 U.S. 912, 91 S.Ct. 879, 27 L.Ed.2d 811 (1971); 3B J. Moore, Federal Practice (2d ed. 1982) ¶ 23.-80[2.–1]. Judicial approval of a consent decree is clearly a condition subsequent, and should not affect the legality of the formation of the proposed consent decree as between the negotiating parties.

Further, we reiterate that basic contractual principles, in particular the law concerning offer and acceptance, apply in evaluating the formation of consent decrees. If we accepted the state's argument, the parties' agreement would be meaningless, since either party to a consent decree could back out at any time prior to court approval and the legal ramifications of the earlier offer and acceptance would be empty. We decline to accept such an inequitable construction.

The authority cited by the state in support of its proposition is not on point. In *Detroit Football Club v. Robinson*, 186 F.Supp. 933 (E.D.La.1960), *aff'd*, 283 F.2d

657 (5th Cir. 1960), the contract itself explicitly required the third party's approval for the contract to be binding. No such approval was required by the parties as a condition of the formation of their proposed settlement.

In summary, the parties to consent decrees are bound by general contract principles with regards to their proposed settlement. The requirement of judicial approval is not to protect the negotiating parties, but to protect unrepresented parties, and thus the negotiating parties are bound by any contract they make, subject of course to the condition subsequent of judicial disapproval.

AFFIRMED.