720 F.2d 1114
 83-2 USTC P 13,548
 ESTATE OF Ada E. VAN HORNE, Deceased, Robert L. Farmer and
Richard R. Cole, Executors, Petitioners-Appellees
Cross-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant Cross-Appellee.
 Nos. 82-7659, 82-7716.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 4, 1983.
Decided Nov. 22, 1983.
 
 Robert L. Weaver, Forster, Gemmill & Farmer, Los Angeles, Cal., for respondent-appellant.
 Terry L. Fredricks, Washington, D.C., for petitioners-appellees.
 On Appeal from the United States Tax Court.
 Before FARRIS and REINHARDT, Circuit Judges, and WEIGEL*, District Judge.
 REINHARDT, Circuit Judge:
 
 
 1
 This case concerns the proper method of valuing certain assets and liabilities for estate tax purposes. The tax court, 78 Tax Court 728, determined that under I.R.C. Sec. 2053(a)(3) (1976) the estate is entitled to a deduction for the full date of death actuarial value of a life time spousal support obligation even when the spouse of the decedent dies prior to the filing of the estate tax return. The government appeals. The tax court also determined that the relevant block of shares to be considered for a blockage discount was that held by the estate at the alternate valuation date, rather than at the date of decedent's death, and that a blockage discount on those shares was not warranted. The plaintiff cross appeals from these determinations. We affirm the tax court in all respects.
 
 I. Background
 
 2
 The facts are uncontroverted. Ada E. Van Horne (decedent) died September 4, 1976. The federal estate tax return was timely filed on June 1, 1977. The executors elected to value the gross estate as of the alternate valuation date, March 4, 1977, rather than as of the date of death.
 
 
 3
 At the time of her death, the decedent was obligated, pursuant to an interlocutory judgment of dissolution of marriage, to pay $5,000 per month for spousal support to her surviving ex-husband, James Van Horne, for the remainder of his life. The judgment provided that the award could not be modified, notwithstanding either his remarriage or her death. In the event of the latter, the judgment provided that all payments thereafter falling due would become payable by the estate. The ex-husband filed a creditor's claim against the estate on October 29, 1976. The executors filed a petition for court approval of this claim on November 29, 1976, and it was approved on December 27, 1976.
 
 
 4
 The ex-husband died on April 20, 1977, having received only $35,000 from the estate in support payments. At the time of decedent's death, the ex-husband was aware that he had a liver ailment but had no reason to suspect that he was terminally ill with cancer. His fatal condition was not diagnosed until March of 1977.
 
 
 5
 The estate claims a deduction of $596,386.58 for the value of the ex-husband's claim. This amount was calculated by reference to the actuarial tables included in Treas.Reg. Sec. 20.2031-10 (1983). The parties have stipulated that the amount computed is correct, if actuarial valuation is proper. The government contends that actuarial valuation is not proper here because the claim was actually extinguished after payment of only $35,000.
 
 
 6
 At the time of decedent's death she owned 56,454 shares of Wm. Wrigley Jr. Co. common stock (Wrigley stock). The executors decided to liquidate 42,416 shares to pay various expenses and taxes owed by the estate. In February 1977, these shares were sold in three blocks. Thus, on March 4, 1977, the alternate valuation date, the estate held only 14,038 shares of Wrigley stock. The estate contends on appeal that the entire block of Wrigley stock should be valued on the basis of a blockage discount.
 
 II. Valuation of Spousal Support Obligation
 
 7
 The general principle that a claim against a decedent's estate is to be valued at the time of the decedent's death, and that events subsequent to death do not alter this valuation, was first announced by the Supreme Court in Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929). We recently reaffirmed this principle in Propstra v. United States, 680 F.2d 1248 (9th Cir.1982). In Propstra, the petitioner's estate included two parcels of real estate which were encumbered by liens for past dues and penalties owing to a local water users' association. The Government contested petitioner's claim that the liens were to be valued at the time of decedent's death. Because the amount of the liens was reduced by the association prior to the time the tax return was filed, the Government argued that their actual value rather than their value as of the date of death, should be deducted for estate tax purposes. We held that because the claims were certain and enforceable, we would not consider post-death events. Rather, "as a matter of law, when claims are for sums certain, and are legally enforceable as of the date of death, post-death events are not relevant in computing the permissible deduction." Id. at 1254.
 
 
 8
 The government argues both that Propstra was wrongly decided and that it is distinguishable on the ground that petitioner's spousal support obligation was not a "sum certain" and is therefore outside the rationale of Propstra. It contends that "[h]ere the spousal support obligation amounted in effect to a series of monthly claims each of which was contingent upon James' survival to a particular date."
 
 
 9
 In deciding Propstra, we carefully considered and rejected many of the arguments which the Government sets forth here. We said that Congress clearly intended that post-death events be disregarded when valuing legally recognized and enforceable claims against an estate.[1] We see no reason to reconsider Propstra or to distinguish spousal support obligations from other allowable claims.[2]
 
 
 10
 The fact that it is necessary to refer to an actuarial table in order to value a support obligation does not justify our reaching a different result here than we did in Propstra. A claim that is actuarialy valued is not uncertain for estate tax purposes. We have recently approved the use of actuarial tables to value assets for purposes of estate tax deduction in Bank of California v. U.S., 672 F.2d 758 (9th Cir.1982). After reexamining this method of valuation we concluded that "actuarial tables provide a needed degree of certainty and administrative convenience in ascertaining property values." Id. at 760.
 
 
 11
 Moreover, the charitable trust at issue in Ithaca Trust Co. also required actuarial valuation. Justice Holmes, writing for the Court, specifically considered whether post-death events are relevant when lifetime interests are at issue, and concluded that they are not:
 
 
 12
 "The first impression is that it is absurd to resort to statistical probabilities when you know the fact. But this is due to inaccurate thinking. The estate so far as may be is settled as of the date of the testator's death.... Tempting as it is to correct uncertain probabilities by the now certain fact, we are of opinion that it cannot be done, but that the value of the [wife's] life interest must be estimated by the mortality tables."
 
 
 13
 Id. at 155, 49 S.Ct. at 291.
 
 
 14
 We hold that legally enforceable claims valued by reference to an actuarial table meet the test of certainty for estate tax purposes. Because decedent's spousal support obligation meets that test, it is subject to the Propstra rule. We affirm the tax court's determination that the date of decedent's death was the proper time for valuation of the claim.
 
 III. The Blockage Discount of Shares
 
 15
 We affirm the tax court's determination that only those shares remaining in the estate on March 4, 1977, the alternate valuation date, may be considered for blockage discount. I.R.C. Sec. 2032 (1976) states unambiguously that property disposed of prior to the alternate valuation date shall be valued at market price.[3]
 
 
 16
 We also affirm the tax court's finding that petitioner has failed to show that the market price of Wrigley shares on March 4, 1977 did not accurately reflect the fair market value of the block of stock held by the estate on that date. It is petitioner's burden to establish that the block of stock at issue is so large in relation to the market that the market price is misleading. Treas.Reg. Sec. 20.2031-2(e) (1983). We note that the remaining 14,038 shares represented only 0.36 percent of Wrigley stock outstanding on that date.
 
 
 17
 We have no disagreement with the tax court's conclusion that the remaining shares could have been disposed of in an orderly manner at no less than the market price. Petitioner argues that the fact that 42,416 shares liquidated prior to March 4 were sold at discounted prices serves as evidence that the residual block of 14,038 shares could not have been disposed of at the market price at the alternate valuation date. However, petitioner did not refute the evidence adduced at trial that the market had been in a state of decline prior to the alternate valuation date but was in a state of recovery by that time. Because the market in Wrigley stock was rising, the estate would not have been required to accept less than the market price in order to sell the remaining shares. We may reverse only if the tax court's findings are clearly erroneous, Collins v. Thompson, 679 F.2d 168, 170 (9th Cir.1982). Clearly, they were not.
 
 
 18
 AFFIRMED.
 
 
 
 *
 Honorable Stanley Alexander Weigel, United States District Judge, Northern District of California, sitting by designation
 
 
 [1]
 In Propstra, we reviewed the conflicting authorities and commentators who have addressed this issue. After careful consideration we found those authorities holding post-death events irrelevant to the computation of certain and enforceable claims to be persuasive. Id. at 1254 n. 10
 
 
 [2]
 The government seeks to distinguish charitable deductions which are intended "to encourage testators to make bequests to charity" from spousal support obligations, claiming that, the section of the Code (Sec. 2053) permitting spousal support obligations to be deducted "necessarily contemplates the consideration of post-death events." While we do not doubt that Congress' purpose in enacting each deduction is unique, the government cites no authority demonstrating a legislative desire to effect differing post-death treatment in valuing these deductions
 
 
 [3]
 I.R.C. Sec. 2032(a)(1) provides in relevant part that when alternate valuation is elected, "[i]n the case of property distributed, sold, exchanged, or otherwise disposed of, within 6 months after decedent's death such property shall be valued as of the date of distribution, sale, exchange, or other disposition."