JEAN STEINBERG, DONOR, PETITIONER *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT

Docket No. 23865–11.　　　Filed September 16, 2015.

P entered into a binding gift agreement with her daughters
under which P gave her daughters properties and in exchange
the daughters agreed to assume and to pay, among other
things, any estate tax liability imposed under I.R.C. sec.
2035(b) as a result of the gifts in the event that P passed
away within three years of the gifts. In calculating for gift tax
purposes the gross fair market value of the property trans-
ferred to the daughters, P reduced the fair market value of

the properties by an amount representing the value of the daughters' assumption of the I.R.C. sec. 2035(b) estate tax liability, among other things. *Held*: The daughters' assumption of a potential I.R.C. sec. 2035(b) estate tax liability was a detriment to the daughters and a benefit to P such as would be considered by a willing buyer and willing seller in determining a sale price of the transferred property rights. *Held*, *further*, the net gift agreement did not duplicate the effect of New York law. *Held*, *further*, the value of the daughters' assumption of potential I.R.C. sec. 2035(b) estate tax liability was determined using R's mortality tables and applying interest rates under I.R.C. sec. 7520 as a discount factor.

*John W. Porter*, *Michael S. Arlein*, *Keri D. Brown*, and *Jeffrey D. Watters, Jr.*, for petitioner.

*John Richard Mikalchus* and *Molly H. Donohue*, for respondent.

KERRIGAN, *Judge*: Respondent issued petitioner a notice of deficiency, increasing petitioner's gift tax liability by $1,804,908 for tax year 2007. Respondent disallowed the discount petitioner made for her daughters' assumption of the section 2035(b) estate tax liability.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the tax year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

The issues for consideration are (1) whether a donee's promise to pay any Federal or State estate tax liability that may arise under section 2035(b) if the donor dies within three years of the gift should be considered in determining the fair market value of the gift, and (2) if so, the amount, if any, that the promise to pay reduces the fair market value of the gift.

### FINDINGS OF FACT

Some of the facts are stipulated and are so found. Petitioner resided in New York when she filed the petition.

Petitioner married Meyer Steinberg in 1944. Petitioner and Mr. Steinberg had four children: Susan Green, Bonnie Englebardt, Carol Weisman, and Lois Zaro (collectively, daughters).

Mr. Steinberg was one of the founders of Enterprise Asset Management, Inc. (EAM). Mr. Steinberg served as the chief executive officer of EAM from its inception. Petitioner's daughters served as directors of EAM during 2007.

On June 20, 2002, petitioner executed a will (2002 will). In the 2002 will petitioner named Mr. Steinberg as the beneficiary of her residuary estate unless he predeceased her, in which case each of her daughters would split her residuary estate in equal shares.

Mr. Steinberg died on December 4, 2003. Mr. Steinberg left a will that established a marital trust (marital trust). Petitioner was named the trustee and a beneficiary of the marital trust, and she was granted a power of appointment over the assets of the marital trust. As of April 17, 2007, the marital trust held assets with a total value of $122,850,623. The assets of the marital trust consisted of ownership interests in several different entities worth $17,820,648 (representing 14.5% of the total value) and cash.

On December 20, 2005, petitioner executed a codicil to the 2002 will (2005 codicil). The 2005 codicil provided that only Ms. Englebardt, Ms. Weisman, and Ms. Zaro would inherit under the marital trust and her residuary estate.

On July 21, 2006, petitioner executed a new will (2006 will). The 2006 will provided that all four of her daughters would split her residuary estate in equal shares. The 2006 will also provided that (1) any estate taxes imposed with respect to property passing under the 2006 will would be paid out of petitioner's residuary estate and (2) if petitioner died within three years, any section 2035(b) estate tax would be apportioned to her daughters.

During 2006 and 2007 the daughters requested that petitioner terminate the marital trust so they could receive immediate distributions of its assets. Petitioner agreed to terminate the trust and began negotiations.

*Net Gift Agreement*

On April 17, 2007, petitioner entered into a binding gift agreement (net gift agreement) with her daughters. Petitioner also terminated the marital trust. At that time petitioner was 89 years old. The assets of the marital trust were distributed as follows: (1) $3,401,316 to pay outstanding legal fees; (2) $10 million to petitioner; and (3) the remainder of

the assets to the daughters pursuant to the net gift agreement.

In the net gift agreement petitioner agreed to make gifts of properties to her daughters. In exchange, her daughters agreed to assume and to pay any Federal gift tax liability imposed as a result of the gifts. The daughters also agreed to assume and to pay any Federal or State estate tax liability imposed under section 2035(b) as a result of the gifts in the event that petitioner passed away within three years of the gifts. Section 3, Federal and State Estate Tax, of the net gift agreement provides in pertinent part:

> a. *Assumption of Federal and State Estate Tax Liability*. Each Donee hereby agrees to assume, pay and indemnify the Executor against all additional federal and state estate tax liability assessed pursuant to Code Section 2035(b) (i) if Mrs. Steinberg [petitioner] does not survive for three years following the Effective Date and(ii) that is directly attributable to Mrs. Steinberg's transfer of the Gift Property made under the Instruments of Transfer, including all penalties and interest which accrue upon such estate tax liability except such penalties and interest that are directly attributable to actions or delays committed by the Executor or another Donee (the *Estate Tax Liability*). For purposes of determining and allocating the Estate Tax Liability, (i) the value of all additional tax shall be as finally determined for federal estate tax purposes, (ii) the only gift tax taken into account in the calculation shall be the gift tax on Mrs. Steinberg's transfers of the Gift Property to the Donees made under the Instruments of Transfer, and (iii) the amount of the Estate Tax Liability each Donee shall bear shall be an amount equal to the Estate Tax Liability attributable to the Donee's Gift Tax Share A and the Donee's Gift Tax Share B (in each case, collectively, the Donee's *Estate Tax Share*).

> \*   \*   \*   \*   \*   \*   \*

> c. *Payment of Estate Tax Liability*.

> i. *Donees' Payment to Executor*. Each Donee shall deliver to the Executor an amount equal to the Donee's Estate Tax Share by certified check made payable to the United States Treasury, no later than thirty days before the due date for payment of the Estate Tax Liability, or, if later, as soon thereafter as the Executor notifies the Donee of the amount of the Estate Tax Liability.

The net gift agreement also provides remedies if any daughter fails to pay her share of any section 2035(b) estate tax liability. Section 7(c), Remedy Available in Event of Default, of the net gift agreement provides in pertinent part:

ii. *Default in Payment of Estate Tax Liability*. If the Executor determines that a Donee is in default * * * the Executor shall give notice to the Donee that the Donee is in default (*Estate Tax Default Notice* and *Estate Tax Default Notice Date*, respectively). If the Donee fails within 10 business days after the Default Notice Date to deliver to the Executor the remaining balance of the Donee's Estate Tax Share of the Estate Tax Liability (*Donee's Estate Tax Balance*), all Cash Distributions [i.e., certain quarterly distributions to which the donees are entitled] otherwise distributable to a Donee shall be delivered directly to the Executor * * * . Each Donee agrees that, upon the date on which the Executor gives an Estate Tax Default Notice to a Donee, the Executor also shall deliver a duplicate copy of the Estate Tax Default Notice to the Manager, and the Donee shall be deemed to have directed the Manager to deliver the Cash Distribution otherwise distributable to the Donee directly to the Executor in satisfaction of the Donee's Estate Tax Balance as provided in this paragraph. Each Donee agrees to perform any and all acts necessary as a shareholder, partner, member, manager or director of any entity governed by an Applicable Agreement to effect the payment of the Donee's Estate Tax Balance to the Executor.

The net gift agreement was the result of several months of negotiation between petitioner and her daughters. Petitioner and her daughters were represented by separate counsel. The fair market value of the properties transferred by petitioner to her daughters before consideration of the gift tax liability and section 2035(b) estate tax liability assumed by the daughters was $109,449,307.

Also on April 17, 2007, the daughters signed an escrow agreement. Pursuant to the escrow agreement the daughters each transferred $10 million to an escrow fund set up with HSBC Bank. Of the $40 million, $32,437,261 was used to pay the Federal gift tax that resulted from the gifts, and the remaining balance was set aside to pay any section 2035(b) estate tax liability. [1]

*Valuation of Property*

To determine the fair market value of the property rights petitioner transferred pursuant to the net gift agreement, petitioner hired William H. Frazier, a qualified appraiser. Mr. Frazier concluded that the aggregate value of the net gift on the date it was made, April 17, 2007, was $71,598,056. He determined that the present value of the net gifts was the

_____

[1] This calculation is based on the amount of tax before credits.

fair market value of assets conveyed by transfer from the donor less the liabilities (tax or otherwise) assumed by the donees. According to the valuation, the payment by the donees of their share of the estate taxes is a contingent liability and the probability of this liability can be calculated.

*Tax Return and Notice of Deficiency*

On October 15, 2008, petitioner timely filed a Form 709, United States Gift (and Generation-Skipping Transfer) Tax Return, for tax year 2007. On the Form 709 petitioner reported taxable gifts of $71,598,056 and total gift tax of $32,034,311. Petitioner attached a summary of the net gift agreement which included a description of Mr. Frazier's determination of the value of the net gifts, to the Form 709.

On July 25, 2011, respondent mailed the notice of deficiency, which increased the aggregate value of petitioner's net gifts to her daughters from $71,598,056 to $75,608,963, for a total gift tax increase of $1,804,908. Respondent disallowed the discount petitioner made for her daughters' assumption of the section 2035(b) estate tax liability.[2] The parties agree that the net gift agreement resulted in a net gift.

## OPINION

### I. *Burden of Proof*

Generally, taxpayers bear the burden of proving that the Commissioner's determinations in the notice of deficiency are erroneous. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). The burden of proof may shift to the Commissioner if the taxpayers establish that they complied with the requirements of section 7491(a)(2)(A) and (B) to substantiate items, to maintain required records, and to cooperate fully with the Commissioner's reasonable requests. However, we decide these issues on the preponderance of the evidence and, therefore, the burden of proof is not relevant. *See Estate*

_____

[2] The notice of deficiency increased the value of petitioner's total gifts for tax year 2007 by $4,010,907 because of "net gifts to donor's four daughters". Nonetheless, both respondent and petitioner claim that the notice of deficiency disallowed petitioner's entire $5,838,540 discount for her daughters' assumption of the sec. 2035(b) estate tax liability.

*of Black v. Commissioner*, 133 T.C. 340, 359 (2009); *Knudsen v. Commissioner*, 131 T.C. 185, 189 (2008).

II. *Statutory Framework*

A. *Gift Tax Generally*

Section 2501(a) imposes a tax on the transfer of property by gift. The donor is primarily responsible for paying the gift tax. Sec. 2502(c); *see also* sec. 25.2502–2, Gift Tax Regs. The gift tax is imposed upon the donor's act of making the transfer, rather than upon receipt by the donee, and it is measured by the value of the property passing from the donor, rather than the value of enrichment resulting to the donee. Sec. 25.2511–2(a), Gift Tax Regs. Donative intent on the part of the donor is not an essential element for gift tax purposes; the application of gift tax is based on the objective facts and circumstances of the transfer rather than the subjective motives of the donor. Sec. 25.2511–1(g)(1), Gift Tax Regs.

The amount of gift tax is based on the aggregate value of taxable gifts made during the year, among other things. *See* sec. 2502(a) (imposing the gift tax on a cumulative basis). Taxable gifts are the total amount of gifts made during the year, less certain deductions.[3] Sec. 2503(a). The amount of a gift of property is generally the value of the property on the date of the gift. Sec. 2512(a). The gift is complete when the property has left the donor's dominion and control. *See* sec. 25.2511–2(b), Gift Tax Regs. The value of the property is the price at which it would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of the relevant facts. Sec. 25.2512–1, Gift Tax Regs.

The willing buyer and the willing seller are hypothetical persons, rather than specific individuals or entities, and the individual characteristics of these hypothetical persons are not necessarily the same as the individual characteristics of the actual seller or the actual buyer. *Estate of Bright v. United States*, 658 F.2d 999, 1005–1006 (5th Cir. 1981); *Estate of Kahn v. Commissioner*, 125 T.C. 227, 231 (2005); *Estate of Davis v. Commissioner*, 110 T.C. 530, 535

---

[3] Sec. 2503 also enumerates a handful of exclusions, none of which are relevant in this case.

(1998). The willing seller is purely hypothetical and not the actual taxpayer. *See Chapman Glen Ltd. v. Commissioner*, 140 T.C. 294, 325 (2013). The willing buyer is a purely hypothetical figure, and valuation does not take into account the personal characteristics of the actual buyers. *Estate of Newhouse v. Commissioner*, 94 T.C. 193, 218 (1990). The hypothetical "willing buyer/willing seller" test substitutes the most economically rational analysis of a sale for evidence of the actual buyer's intent. *Estate of Jameson v. Commissioner*, 267 F.3d 366, 372 (5th Cir. 2001), *vacating and remanding* T.C. Memo. 1999–43.

The amount of the gift is the amount by which the value of the property transferred exceeds the value of consideration received in money or money's worth. *See* sec. 2512(b); secs. 25.2511–1(g)(1), 25.2512–8, Gift Tax Regs.; *see also Commissioner v. Wemyss*, 324 U.S. 303, 306–307 (1945). Thus, if a donor makes a gift subject to the condition that the donee pay the resulting gift tax, the amount of the gift is reduced by the amount of the gift tax. *See Harrison v. Commissioner*, 17 T.C. 1350, 1357 (1952). Such a gift is commonly referred to as a "net gift".

B. *Section 2035(b) "Gross-Up" Provision*

Under section 2035(b) (formerly section 2035(c), amended by the Taxpayer Relief Act of 1997, Pub. L. No. 105–34, sec. 1310(a), 111 Stat. at 1043) a decedent's gross estate is increased by the amount of any gift tax paid by the decedent or the decedent's estate on any gift made by the decedent during the three-year period preceding the decedent's death. For purposes of this "gross-up" provision, we have decided that the phrase "gift tax paid by the decedent or the decedent's estate" during the relevant three-year period includes gift tax attributable to a net gift the decedent made during that period (despite the fact that the donee is responsible for paying the gift tax in that situation). *Estate of Sachs v. Commissioner*, 88 T.C. 769, 777–778 (1987), *aff'd in part, rev'd in part on other grounds*, 856 F.2d 1158, 1164 (8th Cir. 1988).

Congress enacted what is now section 2035(b) as part of an effort to mitigate the disparity of treatment between the taxation of lifetime transfers and transfers at death. *See* H.R. Rept. No. 94–1380, at 11 (1976), 1976–3 C.B. (Vol. 3) 735,

745.[4] Congress imposed the gross-up provision on gift tax paid within three years of death because "the gift tax paid on a lifetime transfer which is included in a decedent's gross estate is taken into account both as a credit against the estate tax and also as a reduction in the estate tax base, [so] substantial tax savings can be derived under present law by making so-called 'deathbed gifts' even though the transfer is subject to both taxes." *Id.* at 12, 1976–3 C.B. (Vol. 3) at 746. Congress intended the gross-up rule to "eliminate any incentive to make deathbed transfers to remove an amount equal to the gift taxes from the transfer tax base." *Id.*

C. *Net Gifts*

The net gift rationale flows from the basic premise that the gift tax applies to transfers of property only to the extent that the value of the property transferred exceeds the value in money or money's worth of any consideration received in exchange therefor. *See* sec. 2512(b); sec. 25.2512–8, Gift Tax Regs. When a net gift occurs, the donor calculates his or her gift tax liability by reducing the amount of the gift by the amount of the gift tax. *Estate of Morgens v. Commissioner*, 133 T.C. 402, 417 (2009), *aff'd*, 678 F.3d 769 (9th Cir. 2012). The rationale is that "because the donee incurred the obligation to pay the tax as a condition of the gift, 'the donor did not have the intent to make other than a net gift.'" *Id.* (quoting *Turner v. Commissioner*, 49 T.C. 356, 360–361 (1968), *aff'd per curiam*, 410 F.2d 752 (6th Cir. 1969)). In other words the donor reduces the value of the gift by the amount of the tax because the donor has received consideration for a part of the gift equal to the amount of the applicable gift tax. *Id.*

Petitioner's gift may be best described as a "net, net gift" because the donees agreed to pay both the resulting gift tax and any section 2035(b) estate tax. We will refer to petitioner's gift in its entirety as a net gift.

---

[4] Before the enactment of sec. 2035, gifts made within three years of the donor's death were merely presumed to be in contemplation of death. *See* H.R. Rept. No. 94–1380, at 12 (1976), 1976–3 C.B. (Vol. 3) 735, 746. Congress opted for a bright-line test in sec. 2035 to end the "considerable litigation concerning the motives of decedents in making gifts." *Id.*

### III. *Steinberg I*

Respondent contends that the daughters' assumption of petitioner's section 2035(b) estate tax liability does not constitute consideration in money or money's worth under section 2512(b). We earlier denied respondent's motion for summary judgment on this point, concluding that the "estate depletion" theory involved material facts that were the subject of genuine dispute. *See Steinberg v. Commissioner* (*Steinberg I*), 141 T.C. 258 (2013). In *Steinberg I* we held that the daughters' assumption of the section 2035(b) estate tax liability might be quantifiable and reducible to monetary value and that a willing buyer and a willing seller, in arriving at a sale price, might take the daughters' assumption of this liability into account in appropriate circumstances. We held a trial to establish the facts relevant to these and other issues in the case.

### IV. *Consideration of the Promise To Pay*

#### A. *A Willing Buyer and a Willing Seller*

The fundamental question posed by this case is the fair market value of the property rights transferred under the net gift agreement. Pursuant to section 25.2512–1, Gift Tax Regs., fair market value is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts. All relevant facts and elements of value as of the time of the gift must be considered. *Id.* The "willing buyer/willing seller" test is the bedrock of transfer tax valuation. It requires us to determine what property rights are being transferred and on what price a hypothetical willing buyer and willing seller would agree for those property rights.

The ownership of property has been referred to as owning a "bundle of rights." *Estate of Gibbs v. United States*, 161 F.3d 242, 247 (3d Cir. 1998) (quoting *Loretto v. Teleprompter Manhattan CATC Corp.*, 458 U.S. 419, 435 (1982)). In valuing property, all of the rights that constitute that bundle must be considered. *See Guggenheim v. Rasquin*, 312 U.S. 254, 257 (1941) ("To single out one and to disregard the others is in effect to substitute a different property interest

for the one which was the subject of the gift."). The fair market value of transferred property must take into account any restrictions or conditions limiting the property's marketability, including those imposed by the donor. *Rolfs v. Commissioner*, 135 T.C. 471, 489 (2010), *aff'd*, 668 F.3d 888 (2012).

Pursuant to the net gift agreement (1) the daughters' receive property with a fair market value of $109,449,307 and (2) the daughters' have an obligation to pay the $32,012,711 gift tax liability. In *Steinberg I* we held that a willing buyer and a willing seller in appropriate circumstances could consider the donee's assumption of the section 2035(b) estate tax liability when determining a sale price. 141 T.C. at 281. We now decide whether the net gift agreement is such an appropriate circumstance. An appropriate circumstance arises when the donee's assumption of the section 2035(b) estate tax liability is a detriment to the donee and is a benefit to the donor.

### 1. *Detriment to the Donee*

A willing buyer of the property rights pursuant to the net gift agreement would recognize that to obtain the properties, he or she would also have to assume both the gift tax and the section 2035(b) estate tax liabilities associated with the transfer. The gift tax and the section 2035(b) estate tax liabilities did not exist before the net gift agreement. These liabilities arose as a result of the net gift agreement. The net gift agreement was the product of lengthy negotiations. The daughters had to agree to assume the liabilities in order to gain the benefit of the property they received under the net gift agreement. The donor would not have been willing to transfer the properties without requiring any section 2035(b) estate tax liability to be satisfied.

Any hypothetical recipient of the properties who assumed the liabilities would insist on a reduction of the purchase price to reflect his or her assumption of any section 2035(b) estate tax liability. A similar reduction for valuation purposes is made when a donor makes a gift of his or her interest in an entity with built-in capital gains. *See Estate of Davis v. Commissioner*, 110 T.C. 530. In *Eisenberg v. Commissioner*, 155 F.3d 50, 51–52 (2d Cir. 1998), *vacating and remanding* T.C. Memo. 1997–483, the taxpayer trans-

ferred stock in a C corporation to her children. When she valued the stock for gift tax purposes, she reduced the net asset value of the corporation by the amount of the capital gains tax that she would have incurred if the corporation had liquidated, sold, or distributed its assets. *Id.* at 52. The Commissioner challenged that reduction and argued that as a matter of law a willing buyer would not consider the built-in capital gains tax liability in the valuation analysis. *Id.*

The Court of Appeals for the Second Circuit applied the "willing buyer/willing seller" test and held that the stock's value should be reduced to account for the built-in capital gains tax liability. *Id.* at 59. The Court of Appeals found that when negotiating the value of corporate shares, a willing buyer would demand a discount for potential capital gains tax liability, even if no liquidation, sale, or distribution was contemplated at the time of the transfer. *Id.* at 57–58. Because a willing buyer would insist upon such a discount, the court held that it must be reflected in the value of the property transferred. *Id.* at 57.

The Court of Appeals' reasoning in *Eisenberg* has been adopted by other Courts of Appeals. *See Estate of Jelke v. Commissioner*, 507 F.3d 1317 (11th Cir. 2007), *vacating and remanding* T.C. Memo. 2005–131; *Dunn v. Commissioner*, 301 F.3d 339 (5th Cir. 2002), *rev'g* T.C. Memo. 2000–12; *Estate of Jameson v. Commissioner*, 267 F.3d 366; *Estate of Welch v. Commissioner*, 208 F.3d 213 (6th Cir. 2000), *rev'g* T.C. Memo. 1998–167. The Commissioner subsequently acquiesced to the *Eisenberg* decision. *See* AOD 1999–01, 1999–1 C.B. xix (Jan. 25, 1999).

Similar reasoning has been applied in other contexts. *See Estate of Hall v. Commissioner*, 92 T.C. 312, 338–339 (1989) (recognizing that transfer restrictions on corporate stock would reduce the fair market value of the stock); *Estate of Desmond v. Commissioner*, T.C. Memo. 1999–76, slip op. at 13; *Sackett v. Commissioner*, T.C. Memo. 1981–661 (recognizing that a reasonably informed purchaser would give serious consideration to the liabilities of a business that he or she was purchasing).

The daughters' assumption of the section 2035(b) estate tax liability is a detriment to the daughters because it might result in reductions in the values of the gifts they received if the donor died within three years of the gifts. As in

*Eisenberg* a hypothetical willing buyer of the properties would recognize that to obtain the properties transferred, he or she would need to assume both the gift tax liability and the section 2035(b) estate tax liability and would demand that the price be reduced to account for both of the liabilities.

### 2. *Benefit to the Donor*

The estate depletion theory of gift tax can be applied to determine what constitutes consideration in money or money's worth. Under the estate depletion theory, a donor receives consideration in money or money's worth only to the extent that the donor's estate has been replenished. *See Commissioner v. Wemyss*, 324 U.S. at 307–308; 2 Randolph E. Paul, Federal Estate and Gift Taxation, para. 16.14, at 1114–1115 (1942). The Paul treatise, cited twice with approval by the Supreme Court in *Wemyss*, further notes: "The consideration may thus augment * * * [the donor's] estate, give * * * [the donor] a new right or privilege, or discharge him from liability." Paul, *supra*, at 1115. Thus, the benefit to the donor in money or money's worth, rather than the detriment to the donee, determines the existence and amount of any consideration offset in the context of an otherwise gratuitous transfer. *See Commissioner v. Wemyss*, 324 U.S. at 307–308.

Under Federal tax law the cost of any section 2035(b) estate tax liability is generally borne by the donor's estate and not the donee of the gift. *See* secs. 2001, 2002, 2035(b), 2501. When petitioner made the gifts to her daughters, petitioner accrued both gift tax liability and the potential section 2035(b) estate tax liability. When the daughters assumed the gift tax liability, petitioner's assets were relieved of the gift tax liability and therefore her estate was replenished. Likewise, when the daughters assumed the section 2035(b) estate tax liability, petitioner's estate was relieved of that estate tax liability. This assumption, which we held in *Steinberg I* may be reducible to a monetary value, has replenished petitioner's assets. *Steinberg I*, 141 T.C. at 280.

The daughters' assumption of the section 2035(b) estate tax liability might relieve petitioner's estate of a portion of its estate tax liability. If petitioner died within three years of the gift, her estate would have recourse against the daughters. Accordingly, the willing buyer would demand that the

price of the properties be reduced to account for the section 2035(b) estate tax liability.

B. *Apportionment Clause*

Respondent argues that the daughters' assumption of the section 2035(b) estate tax liability in the net gift agreement did not create any new burden on the daughters or benefit for petitioner because the daughters would have had to bear the burden of the section 2035(b) estate tax liability either under New York law or as beneficiaries of petitioner's residuary estate.

We disagree with respondent's assertion that the net gift agreement duplicates New York law. Respondent's argument is based on a New York State statute entitled "Apportionment of federal and state estate or other death taxes; fiduciary to collect taxes from property taxed and transferees thereof". *See* N.Y. Est. Powers & Trusts Law sec. 2–1.8 (McKinney 2012). The statute provides that a fiduciary may be required to pay estate tax with respect to any property required to be included in the gross estate unless the testator otherwise directs in his or her will that an amount of the tax shall be equitably apportioned among the persons interested in the gross estate to whom property is disposed of, in which case those benefited shall contribute the amounts apportioned against them. *Id.* sec. 2–1.8(a).

At the time of the gifts at issue it was not possible to determine whether N.Y. Est. Powers & Trusts Law sec. 2–1.8 would apply to this case. When the gifts were made on April 17, 2007, the donor was still alive and entirely capable of changing her domicile before her death. There was the possibility that the law of a State other than New York would apply to her estate. *See Estate of McCoy v. Commissioner*, T.C. Memo. 2009–61 (discussing apportionment under Utah law).

At the time of the gifts at issue it was also not possible to determine the provisions of the donor's will that would exist at the time of her death. As matter of law the donor is entitled to change the provisions of her will before her death. There is no certainty that her four daughters would be the beneficiaries of her will. In the past the donor had made changes to her will which at one point excluded one of the daughters as a beneficiary. At the time petitioner and her

daughters signed the net gift agreement, there was no guaranty that the daughters would remain beneficiaries under petitioner's residuary estate. Petitioner is still alive and remains free to change her will at any time. The net gift agreement guaranteed that the daughters would assume the section 2035(b) liability. This guaranty placed a burden on the daughters that they may not have had to otherwise bear.

The will in effect at the donor's death may provide specific provisions regarding the payment of the estate tax and the apportionment among beneficiaries and donees. The apportionment statute is a default provision. *See In re Walrod*, 901 N.Y.S.2d 911 (Sur. 2009).

Because on the date of the gifts it was not certain that the law of New York or any other State would require the donees to pay ratable shares of the estate tax that might be incurred under section 2035(b) on the gift tax paid with respect to the gifts, the provision of the net gift agreement that required the donees to pay those shares was not duplicative or illusionary.

The operation of the net gift agreement can be distinguished from the operation of the New York statutes. The net gift agreement provided an enforcement mechanism to recoup the section 2035(b) estate tax incurred out of the property transferred. New York law is silent on how a personal representative can recoup section 2035(b) estate tax from a donee.

For all these reasons, respondent's "estate depletion" argument does not persuade us that the obligation assumed by petitioner's daughters to pay the section 2035(b) estate tax adds zero value to petitioner's estate because that obligation is an obligation the daughters would have borne anyway under the New York apportionment statute. Because of factual uncertainties as to whether and how the New York apportionment statute would apply at petitioner's death, the daughters' contractual assumption of this tax liability gave rise to a new asset that could be deployed effectively by the executor. This new asset "augmented" or "replenished" petitioner's estate. *See Commissioner v. Wemyss*, 324 U.S. at 307–308; Paul, *supra*, at 1115.

Conceivably, the value of this new asset might not be precisely equal to the actuarial value of the contingent estate tax liability that the daughters assumed. But the record con-

tains no expert testimony that would support a value lower than that. Nor does respondent contend that uncertainties surrounding the application of the New York apportionment statute render the value of the daughters' contractual assumption "too speculative" to be considered for Federal gift tax purposes. Quite the contrary: Respondent concedes that whether "the section 2035(b) estate tax liability is too speculative * * * is not an issue in this case."

At the time petitioner and her daughters signed the net gift agreement there was no guaranty that the daughters would remain beneficiaries under petitioner's residuary estate. Petitioner was still alive and remained free to change her will at any time. The net gift agreement guaranteed that the daughters would assume any section 2035(b) liability. This guaranty placed a burden on the daughters that they might not have had to otherwise bear.

### C. *Arm's Length and Ordinary Course of Business*

Transactions within a family group are subject to special scrutiny, and the presumption is that a transfer between family members is a gift. *Harwood v. Commissioner*, 82 T.C. 239, 258 (1984), *aff'd without published opinion*, 786 F.2d 1174 (9th Cir. 1986). Respondent contends that the daughters' assumption of the section 2035(b) estate tax liability was itself a gift because (1) the net gift agreement was between family members and (2) the net gift agreement was not in the ordinary course of business. Respondent further claims that no part of the net gift agreement, presumably including the daughters' assumptions of the gift tax liability and the section 2035(b) estate tax liability, was "bona fide, at arm's length, and free from any donative intent".

In *Steinberg I* we rejected respondent's claim that a transfer between family members is necessarily a gift unless it was in the ordinary course of business. A transfer between family members that is not in the ordinary course of business may still avoid gift tax to the extent it is made for consideration in money or money's worth. Pursuant to section 25.2512–8, Gift Tax Regs., a transfer made in the ordinary course of business is necessarily a transfer made for consid-

eration;[5] however, not all transfers made for consideration are made in the ordinary course of business. Section 25.2511–1(g)(1), Gift Tax Regs., distinguishes the two: "The gift tax is not applicable to a transfer for a full and adequate consideration in money or money's worth, *or to ordinary business transactions*". (Emphasis added.) Thus, a transfer not in the ordinary course of business may still avoid gift tax to the extent it is made for full and adequate consideration, regardless of whether the transfer was between family members.

Additionally, as we pointed out in *Steinberg I*, respondent's argument is undermined by respondent's concession that the donees' assumption of gift tax liability is not subject to gift tax. *See also* Rev. Rul. 75–72, 1975–1 C.B. 310 (providing an algebraic formula for determining the amount of gift tax owed on a net gift). The daughters' assumption of gift tax liability was a transfer between family members and was not made in the ordinary course of business, but respondent concedes that it was consideration in money or money's worth given in exchange for petitioner's gifts.

Nothing in the record indicates that the net gift agreement was not bona fide or not made at arm's length. Petitioner and her daughters were represented by separate counsel, and the net gift agreement was the culmination of months of negotiation.

## V. *Fair Market Value of the Daughters' Promise To Pay*

Since we find that the daughters' promise to pay any Federal or State estate tax liability that might arise under section 2035(b) if petitioner died within three years of the net gift agreement should be considered in determining the fair market value of the gift, we need to decide what effect the promise has on the fair market value of the gift. Petitioner submitted an expert report that calculates the value of the daughters' assumption of the section 2035(b) liability to be $5,838,540. Respondent did not submit an expert report.

---

[5] "[A] sale, exchange, or other transfer of property made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from any donative intent), will be considered as made for an adequate and full consideration in money or money's worth." Sec. 25.2512–8, Gift Tax Regs.

A. *Petitioner's Expert*

Petitioner's expert was William Frazier, a professional appraiser and managing director of Stout Risius Ross, Inc. He has over 20 years of experience, has performed hundreds of appraisals, and has earned the designation of accredited senior appraiser with the American Society of Appraisers.

The Frazier report began by establishing the gross value of the gifts that petitioner transferred to the daughters under the net gift agreement. Mr. Frazier testified that he used the $109,449,307 gross value calculated in the appraisals that petitioner submitted with her gift tax return.

The report used the methodology described in section 2512, section 25.2511–1, Gift Tax Regs., and Rev. Rul. 75–72, *supra*, to calculate the gift tax liability that the daughters assumed under the net gift agreement. The report calculated the gift tax liability to be $32,012,711.

Next the report calculated the value of the section 2035(b) estate tax liability. Mr. Frazier testified that he used the actuarial tables promulgated by the Commissioner to calculate the probability that petitioner would die within each of the three years after the date of the net gift agreement.[6] The report calculated petitioner's annual mortality rate for year 1, year 2, and year 3 to be 13.84%, 13.04%, and 12.13%, respectively. The report used the section 7520 interest rate applicable on the date of the transfer to determine the present value factors for each of the three years. Then the report took the effective State and Federal estate tax rates for each of the three years and multiplied them by the gift tax included in the estate under section 2035(b). Using this methodology, the report calculated that the daughters' assumption of the section 2035(b) estate tax liability reduced the value of the combined gift by $5,838,540.

We note that the Court of Appeals for the Fifth Circuit accepted Mr. Frazier's methodology for determining the value of property transferred pursuant to a net gift arrangement in *Succession of McCord v. Commissioner*, 461 F.3d 614 (5th Cir. 2006), *rev'g* 120 T.C. 358 (2003). We find Mr. Frazier's methodology to be persuasive.

---

[6] Mr. Frazier used Life Table 90CM promulgated by the Commissioner in sec. 20.2031–7(d)(7), Estate Tax Regs., for transfers made after April 30, 1999.

B. *Respondent's Arguments*

Respondent did not call an expert witness to rebut the Frazier report. Rather, respondent raised two concerns with Mr. Frazier's methodology.

1. *Contingencies Considered by Mr. Frazier*

Respondent argues that Mr. Frazier's analysis is flawed because it fails to consider contingencies such as petitioner's health and general medical prognosis. Mr. Frazier took the possibility of petitioner's death within three years of executing the net gift agreement into account because the daughters' liability for the section 2035(b) estate tax is contingent on that possibility. Mr. Frazier used the Commissioner's own mortality tables to do so.

The most common way to measure the value of a property interest that is dependent on the life expectancy of an individual is to use the Commissioner's actuarial tables. *See, e.g.*, *Estate of Van Horne v. Commissioner*, 720 F.2d 1114, 1116–1117 (9th Cir. 1983) (obligation based upon the life of an individual), *aff'g* 78 T.C. 728 (1982); *see also Estate of Green v. Commissioner*, 22 T.C. 728 (1954) (remainder interests in trusts). The actuarial tables are favored in part because they "provide a needed degree of certainty and administrative convenience in ascertaining property values." *Estate of Van Horne v. Commissioner*, 720 F.2d at 1116 (quoting *Bank of Cal. v. United States*, 672 F.2d 758, 760 (9th Cir. 1982)).

Respondent contends that Mr. Frazier should have also considered petitioner's health and general medical prognosis. The Commissioner's mortality tables necessarily take some account of a person's health and general medical prognosis when arriving at a probability of death. Respondent has not pointed to any specific facts or circumstances that would justify special consideration of petitioner's health or general medical prognosis beyond use of the mortality tables, and the evidence does not suggest that the tables produce an unreasonable result. *Cf. Huntington Nat'l Bank v. Commissioner*, 13 T.C. 760, 772 (1949) (stating that we deviated from use of the mortality table because the elderly widow's health was poor).

2. *Section 7520 Rates*

Respondent also contends that Mr. Frazier incorrectly applied section 7520 rates as the discount factor in calculating the value of the daughters' assumption of the contingent estate tax liability. Specifically, respondent contends that the section 7520 rates are not applicable here because they apply only to annuities, life interests, terms of years, remainders, and reversionary interests.

Mr. Frazier calculated the present value (the value on the day that the parties signed the net gift agreement) of the daughters' potential liability to make a payment to petitioner's estate in one of the subsequent three years. The fact that the payment is contingent rather than certain does not preclude use of the section 7520 rates. It simply requires adjusting the value of the payment to take into account the likelihood of the contingency. Mr. Frazier did account for the contingency by using the Commissioner's actuarial tables. Respondent has not persuaded us that there was a more appropriate method that should have been used. We conclude that the valuation was proper.

VI. *Conclusion*

We conclude that in the circumstances present in this case a hypothetical willing buyer and willing seller would take into account the daughters' assumption of section 2035(b) estate tax liability in arriving at a sale price. We further conclude that the daughters' assumption of section 2035(b) estate tax liability reduces the value of petitioner's gift to the daughters by $5,838,540.

Any contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

*Decision will be entered for petitioner*.